HALL, Judge.
Robert L. Weileman, his wife and their three minor children were involved in an *658 accident on August 3, 1963, when the family-automobile in which they were riding was run into from the rear by an automobile owned and driven by Roger A. Forst. Mrs. Weileman, individually, and Mr. Weileman, both individually and for and on behalf of his minor children, brought this suit against Forst and Dairyland Mutual Insurance Co., Forst’s public liability insurer, in which Mrs. Weileman sought damages for the personal injuries allegedly sustained by her as a result of the accident; Mr. Weileman sought damages for his own alleged personal injuries, for damage to his automobile, and for reimbursement of Mrs. Weileman’s medical and other expenses. He also, on behalf of his three minor children, sought ■damages for the personal injuries allegedly received by them in the accident.
Following trial on the merits judgment was rendered against the defendants in •solido as follows:
1. In favor of Mrs. Weileman for $1,-500.00 plus interest and costs.
2. In favor of Mr. Weileman, individually, for $227.62 plus interest and costs.
Plaintiffs appealed. Defendants neither .appealed nor answered plaintiffs’ appeal.
Liability on the part of defendants was stipulated. The sole question is one of ■quantum.
Plaintiffs contend that the judgment in Mrs. Weileman’s favor should be increased from $1,500.00 to the sum of $8,500.00; that Mr. Weileman should be awarded 4500.00 for his personal injuries plus an additional $500.00 for maid service for his wife; and that the children should be awarded damages for their injuries in the •sum of $1,000.00 to Mary Ann, and $500.00 ■each to Robert, Jr., and Michael.
There is no dispute that Mrs. Weileman received certain injuries as a result of the accident. The main issue is whether or not, in addition to those injuries, a tendernitis (calcified bursitis) of the right arm from which she was later found to be suffering was caused or aggravated by the accident. Although the Trial Judge gave no written reasons for judgment, the parties seem to agree that he awarded $1,-500.00 to Mrs. Weileman for her other injuries, but awarded no damages for the tendernitis.
The accident occurred on August 3, 1963 at about 6 P.M. Mrs. Weileman testified that when the defendant’s car struck from the rear she was thrown to the floor striking her shoulder; that at that time she experienced a strange sensation in her neck and that night had pain in her right side. Thereafter she experienced pain in her right leg, knee and shoulder, but did not seek medical treatment until August 12, 1963 when she visited her family physician, Dr. Ernest A. Schiro, a general practitioner.
Dr. Schiro saw her twice, first on August 12, 1963 and later on August 28, 1963. He testified that on the first visit Mrs. Weileman complained of pain in the right arm and right leg and stiffness on the right side of the neck. His physical examination revealed hematoma of the right arm and right leg with pain over both sites, but no restricted motion. He also found a cervical strain but with full range of motion of the cervical spine and neck. On the second and last visit to Dr. Schiro, Mrs. Weileman complained of pain in the right knee and lumbar spine. Dr. Schiro had x-rays made of the cervical spine and right leg on August 14, 1963 and of the lumbar spine and right knee on August 29, 1963.
All x-rays were negative except for some “loose osseous density” in the soft tissue of the lumbar spine which Dr. Schiro did not associate with the accident, but referred her to Dr. G. Gernon Brown, Jr., an orthopedist, for further treatment.
Dr. Brown examined Mrs. Weileman on September 4, 1963, some four weeks after the accident. He testified that at the time of his examination Mrs. Weileman complained of continued discomfort in her low *659 back area, in her right knee and right shoulder. Her neck was no longer painful. His examination revealed that she had a complete range of motion in her cervical spine with no pain or tenderness in the cervical spine area or the neck. He found no swelling or ecchymosis involving either arm, but found a slight restriction of motion in the right shoulder, with complaint of some discomfort on abduction. He found both legs and both knees to be normal in every respect. His examination of the lumbar spine revealed a slight restriction of motion. Dr. Brown reviewed the x-rays made for Dr. Schiro and found no evidence of injury. Dr. Brown’s opinion, following his first examination, was that Mrs. Weileman had probably sustained a mild strain of the cervical and lumbar areas of the back and that in addition there was “evidence of residual of a probable contusion of the right shoulder.”
X-rays of the right shoulder were taken in Dr. Brown’s office on February 6, 1964, which revealed a small amount of calcification in the right shoulder. Mrs. Weileman had returned to Dr. Brown on this date for a follow-up evaluation. She continued to complain of discomfort in her low back area, but he found a satisfactory range of motion of the lumbar spine and advised her to use a support and restrict her activities.
Dr. O. L. Pollingue, an orthopedist, saw Mrs. Weileman on June 3, 1964. Pier chief complaint was pain in the back. He felt that her complaints were on a postural basis and advised her to take certain exercises and return in five or six weeks. She returned on March 30, 1965 complaining of a stiff neck and pain in the right arm. Dr. Pollingue found a full range of motion in the neck but found that there was tenderness over the point of her right shoulder and some tenderness in the lumbosacral area. He had x-rays made of the neck and right shoulder which revealed a mass of calcification in the soft tissue of the right shoulder. His conclusion was “calcified bursitis” and injected cortisone and novo-caine into the right shoulder. He advised continued exercise for her back, and on April 12, 1965 prescribed a head halter to stretch her neck.
Dr. Irving Redler, an orthopedist, examined Mrs. Weileman on September 16, 1965 at the request of defendant. Dr. Redler was unable to testify on the day of the trial but his written report was placed in evidence by consent. His report reveals that he had x-rays made of her cervical spine, her lumbosacral spine, her right hip, right knee, and right shoulder and gave her a complete orthopedic examination after reviewing the x-rays and written reports of her previous examinations. Dr. Redler found nothing orthopedically wrong with her except the calcium deposit in her right shoulder. By comparing his x-rays of the right shoulder with the x-rays taken by Dr. Brown on February 6, 1964, he found that the calcified deposit had increased from rx%6" to W'xW'-
It is thus seen that Mrs. Weileman made no complaint with reference to her right shoulder until September 4, 1963, some four weeks after the accident when Dr. Brown found some restriction there and some discomfort on abduction. The first x-rays of her right shoulder were made on February 6, 1964, some six months after the accident. By September 16, 1965 the calcium deposit discovered on February 6, 1964 had increased by y%" in length and ]/$" in width.
Drs. Schiro, Brown and Pollingue testified on behalf of plaintiffs. Dr. Redler’s report was introduced by defendants.
Dr. Schiro, not having noticed the condition, could throw no light on the cause of the tendernitis or calcified bursitis.
Dr. Brown testified that calcified bursitis is a degenerative process which is due usually to wear and tear on the shoulder; that it can be caused by trauma; but that he could not tell whether the condition in Mrs. Weileman’s arm pre-existed the accident, nor could he tell whether it was either caused or aggravated thereby. Neither could he say that the increase in size of the *660 calcification between February 6, 1964 and September 16, 1965 was triggered by the accident, because the condition itself is progressive. He admitted the possibility of aggravation but said it was impossible to state its probability.
Dr. Pollingue, basing his opinion on the fact that Mrs. Weileman had no complaint referable to the shoulder before the accident, stated:
“ * * * I would have to assume that this accident either started the condition or it aggravated a pre-existing condition but again you can’t be 100% but if somebody has to put their neck out because it seems that this is what the case is based on and I feel that I could probably make that statement better than a layman that I’d say I would assume that it was due to the accident.”
He further testified:
“ * * * She had no complaints before from what I understand, she’s been having trouble with this region since the accident, so if I have to bend one way or the other it’s just like I said, it would either be precipated by the accident or aggravated but again it’s not 100% possibility.”
He admitted that normal housework could be responsible for such a condition in Mrs. Weileman’s shoulder.
In Dr. Redler’s report of his examination of September 16, 1965 he states:
“In summary, I believe that the patient does have slight residual disability of the right shoulder at present, but I cannot say with any certainty whether or not it was present at the time of the accident or developed afterwards.”
The testimony most favorable to plaintiffs was given by Dr. Pollingue, and even his testimony was rather indefinite. He “assumed” that the bursitis was precipitated or aggravated by the accident; “if I have to bend one way or the other;” “someone has to put their neck out.”
We are of the opinion that plaintiffs have failed to sustain their burden of showing a causal connection between the accident and the bursitis.
Mrs. Weileman’s other injuries (those due to the accident) consisted essentially of a mild cervical sprain and contusions of the right arm and right leg with ecchymosis and hematoma. Nothing was found wrong with her knee and her back complaints were “on a postural basis.” We are of the opinion that the Trial Judge’s award of $1,500.00 for these injuries was not inadequate.
As to the physical injuries allegedly suffered by Mr. Weileman and the three children, the most that the record shows is that each received a minor bruise of no consequence at all. None of them sought medical attention. It is true that Mary Ann complained of a pain across her chest and visited Dr. Schiro on November 22, 1963, nearly three months after the accident, for a chest x-ray. The x-ray was negative for any injury or abnormality.
Plaintiffs contend that the Trial Judge erred in not awarding Mr. Weileman anything for the services of a maid during the time Mrs. Weileman was unable to do her housework. A review of the testimony as to maid service reveals that no exact amount of such service was proven and no reasonable and accurate method of calculating that expense was offered.
The Trial Judge awarded the sum of $227.62 to Mr. Weileman for his other special damages but in so doing overlooked the fact that these damages were stipulated by the parties as follows: $217.62 for Mr. Weileman’s medical expenses, $10.00 for Mary Ann’s chest x-ray and $75.00 automobile repairs, making a total of $302.62. The judgment will have to be amended in this respect.
For the foregoing reasons the judgment appealed from is amended by increasing the amount of the judgment in favor of Robert *661 X.. Weileman from $227.62 to the sum of .$302.62, and as so amended and in all other respects the judgment appealed from is affirmed ; costs of this appeal to he borne by plaintiffs-appellants.
Amended in part and affirmed.